**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239) *Pro Hac Vice Admission Pending*
**MANDELBAUM  SALSBURG, P.C.**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel. (973) 736-4600
rcoleman@lawfirm.ms
jmacmull@lawfirm.ms

*Attorneys for Plaintiffs CMC Food Inc. and*
*Michael Culley*

| | |
|---|---|
| CMC FOOD INC., a  New Jersey corporation, and MICHAEL CULLEY, Individually, | Civil Action No. |
| | 18-cv-8939 |
| *Plaintiff,* | |
| | **COMPLAINT** |
| v. | **AND JURY DEMAND** |
| MITLITSKY EGGS, LLC and RICHARD MITLITSKY, Individually, | |
| *Defendants.* | |

Plaintiffs CMC Food, Inc. ("CMC") and Michael Culley, by their undersigned counsel, complain and state as follows:

**THE PARTIES**

1.     Plaintiff CMC is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business located at 699 Kapkowski Road, Elizabeth, New Jersey.

2.     Plaintiff Culley is an individual domiciled in the State of New Jersey.

3.     Defendant Mitlitsky Eggs LLC ("Mitlitsky Eggs"), is a limited liability corporation which, upon information and belief, is organized and existing under the laws of the State of Connecticut, having its principal place of business located at 74 Card Street, Lebanon, Connecticut.

4.     Defendant Mitlitsky ("Mitlitsky"), whose domicile is presently unknown to plaintiff, is an individual who, upon information and belief, is a principal of Mitlitsky Eggs, has sold to defendant Mitlitsky Eggs, assisted in reselling the counterfeit items, or facilitated the breaches complained of herein.

## JURSIDICTION AND VENUE

5.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b) and 15 U.S.C. §§ 1116. This Court has supplemental jurisdiction over plaintiffs' claims under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over the corporate defendant in that it is responsible for and participated in the illegal activity described in this Complaint, including the purchase, sale and delivery of counterfeit goods bearing plaintiffs' trademarks in the State of New Jersey, and regularly conducts business in the State of New Jersey.

7.     This Court has personal jurisdiction over the individual defendant, in that he is, upon information and belief, a shareholder, partner or proprietor of the corporate defendant, and, upon information and belief, imported, sold or actively and knowingly assisted the corporate defendant in reselling the counterfeit goods or otherwise facilitating the breaches complained of herein.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) because the facts giving rise to the acts or omissions alleged herein took place in this district and because the defendants are subject to personal jurisdiction in this district.

## BACKGROUND FACTS

### Plaintiffs' Trademarks and Products

9.      CMC, in cooperation with its several distributors, is a leader in developing, manufacturing and marketing fresh shell eggs and egg products. As a second generation egg producer, CMC's reputation for superior quality egg products has developed and expanded across multiple products and markets.

10.     CMC does business under the trademark THE FARMER'S HEN® (U.S. Reg No. 5,385,223), a registration that is valid and subsisting, by assignment from Culley, a principal of CMC.

11.     CMC also owns common law rights and rights under the laws of the State of New Jersey in the trademark THE FARMER'S HEN for use in connection with eggs and egg products.

12.     These registered, common law and state statutory trademarks are collectively referred to as the "CMC Marks."

13.     CMC displays its CMC Marks and CMC products in its advertising and promotional materials. To date, CMC has spent significant dollars in advertising and promoting the CMC Marks and CMC products, and CMC, as a result, has enjoyed substantial revenues.

14.     The CMC Marks have been widely promoted in the eastern United States since at least as early as 2014. The CMC Marks are among the most widely recognized trademarks for organic, free range and pasture raised eggs in the eastern U.S., and the public has come to rely on

the CMC Marks, recognizing that products bearing the CMC Marks originate exclusively with CMC.

15.     Customers, potential customers, and other members of the public and industry associate the CMC products with exceptional freshness and quality. This is because CMC has, since its inception, championed the very high quality of its egg products.

16.     To this end, CMC maintains strict quality control standards for all of its products. All genuine CMC products are inspected and approved by CMC prior to distribution and sale and are distributed through CMC's extensive network of authorized distributors.

17.     CMC's continued success depends on consumer confidence in the quality of CMC's products and the concomitant goodwill associated with the CMC Marks.

18.     As set forth below, however, this goodwill has been, and unless enjoined by this Court will continue to be, eroded by defendants' conduct.

**Defendants' Unlawful Acts**

19.     In or around 2014, plaintiffs agreed to authorize defendant Mitlitsky Eggs to distribute CMC's products to supermarkets and other retailers and to use the CMC Marks in connection with those products (the "2014 Agreement").

20.     Upon information and belief, Mitlitsky, as principal of Mitlitsky Eggs, accepted and ratified the terms of the 2014 Agreement on behalf of Mitlitsky Eggs and himself.

21.     One material term of the 2014 Agreement was that CMC would wholly absorb the cost of discounting as a result of coupon advertising, as well as incidental egg breakage.

22.     In or about September 2017, however, CMC determined that Mitlitsky Eggs was selling more eggs bearing the CMC Marks than it was buying.

23.     Upon further investigation, CMC learned that Mitlitsky Eggs was buying eggs from another supplier and selling them in containers bearing CMC Marks and fraudulently passing them off to the public as genuine CMC eggs.

24.     In or around mid-January 2018, plaintiffs confronted defendants and demanded that defendants return all products bearing the CMC Marks in their possession to CMC for inspection.

25.     Defendants refused plaintiffs' demand, and instead attempted to "unload" the infringing merchandise by selling it to Bozzuto's Inc. ("Bozzuto's"), a Connecticut-based wholesaler with which CMC deals regularly.

26.     At CMC's request, Bozzuto's allowed CMC representatives into its warehouse, whereupon CMC learned that Mitlitsky Eggs had sold its entire inventory of products bearing the CMC Marks to Bozzuto's at below-market rates for genuine CMC eggs.

27.     On February 2, 2018, counsel for CMC transmitted to defendants, via certified and regular first-class U.S. Mail, written notice that CMC was immediately terminating its agreement with Mitlitsky Eggs because of the conduct set forth above.

28.     As of the date hereof, defendants have not complied with the demands set forth in plaintiffs' February 2, 2018 letter.

29.     Instead, defendants have continued their infringement of the CMC Marks by distributing, advertising, marketing, selling or offering to sell non-CMC products while utilizing the CMC Marks (the "Counterfeit Products").

30.     The Counterfeit Products are of significantly inferior quality and farming methods compared to genuine CMC Products.  For example, they are not "free range" as is CMC's products.

31.     Notwithstanding these material differences in quality and farming methods, however, both the Counterfeit Products and genuine CMC Products look like eggs, and are for all practical purposes identical in appearance.

32.     Defendants' use of the CMC Marks has not been authorized by plaintiffs and, indeed, as set forth above, is in frank disregard of plaintiffs' demand that such conduct cease.

33.     Defendants' infringing and unlawful conduct is knowing, willful and intentional.

34.     The sale by defendants of the Counterfeit Products is likely to cause confusion, or to cause mistake or to deceive.

35.     Defendant Mitlitsky, as the principal of Mitlitsky Eggs, a closely-held is corporation, is upon information and belief personally involved in the infringing and unlawful conduct alleged herein, is aware of it or should be aware of it.

## COUNT I
### Trademark Infringement – 15 U.S.C. §1114

36.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

37.     THE FARMER'S HEN® is an inherently distinctive trademark or, in the alternative, is a trademark that has acquired distinctiveness for, *inter alia*, fresh shell eggs and egg products.

38.     Because of the extensive advertising, sales, and publicity afforded by CMC's superior position in the marketplace and its use of THE FARMER'S HEN® as a trademark, the CMC Mark has acquired secondary meaning, and any service, product or advertisement bearing the mark is associated by the public as a originating with or approved by CMC.

39.     Defendants have used, and upon information and belief, continue to use THE FARMER'S HEN® as a trademark in connection with distributing, advertising, marketing, selling or offering to sell non-CMC products.

40.     Defendants' conduct creates the false impression that the egg products it is selling under the CMC Marks originate with or are otherwise approved by CMC when, in fact, they are not.

41.     Defendants' conduct has caused and unless enjoined will continue to cause substantial and irreparable injury to the public, CMC's reputation, goodwill and sales.

42.     Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43.     As a direct and proximate result of defendants' conduct, CMC has suffered damage to its valuable CMC Marks, and other damages in an amount to be proven at trial.

44.     CMC has no adequate remedy at law.

### COUNT II
### Trademark Counterfeiting – 15 U.S.C. §1114

45.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

46.     As alleged above, defendants' unauthorized use of the CMC Marks constitutes use of a spurious mark which is identical with, or substantially indistinguishable from, a registered trademark.

47.     The Counterfeit Products are identical or substantially indistinguishable from plantiffs' products bearing registered CMC Marks.

48.     The Counterfeit Products sold by defendants are intended to, and do, imitate all facets of CMC's genuine product, including the CMC Marks, so that purchasers are deceived into buying what they believe is a genuine CMC egg product.

49.     Defendants are not, and were not at the time of the manufacture or production of the Counterfeit Products, authorized to use the CMC Marks in the manner described above.

50.     Defendants' conduct has caused and unless enjoined will continue to cause substantial and irreparable injury to the public, CMC's reputation, goodwill and sales.

51.     Defendants' conduct constitutes trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     As a direct and proximate result of defendants' conduct, CMC has suffered damage to its valuable CMC Marks, and other damages in an amount to be proven at trial.

53.     CMC has no adequate remedy at law.

## COUNT III
### False Designation of Origin and
### False Advertising – 15 U.S.C. § 1125(a)(1)(B)

54.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

55.     Defendants' fraudulent use of the CMC Marks on or in connection with its sale of the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive the trade and the public as to the origin, source, sponsorship, or affiliation of such products.

56.     The foregoing acts by defendants constitute the unlawful use of false or misleading descriptions, false advertising, and false designations of the origin or sponsorship of defendants' goods in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a).

57.     Defendants' unauthorized use of the CMC Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized, sponsored, approved, endorsed, or licensed by CMC.

58.     Defendants have used and continue to willfully use the CMC Marks with the intent to confuse, mislead, or deceive members of the trade and the public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and with the intent to unlawfully trade on plaintiffs' reputation and goodwill.

59.     As a direct and proximate result of defendants' conduct, the public has been misled and unless such conduct is enjoined will continue to be misled.

60.     Moreover, CMC has suffered damage to the CMC Marks as well as other damages in an amount to be established at trial.

61.     CMC has no adequate remedy at law.

## COUNT IV
### Unfair Competition – 15 U.S.C. § 1125(a)(1)(A)

62.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

63.      By their conduct alleged above, defendants are falsely representing that CMC is affiliated, connected, or associated with, or sponsored or approved by CMC in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

64.     As a direct and proximate result of defendants' unlawful conduct, plaintiffs have suffered damages and have been harmed financially and continue to suffer harm to their reputation and goodwill in an amount to be determined at trial.

65.     CMC has no adequate remedy at law.

## COUNT V
## Common Law Unfair Competition

66.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

67.     Defendants' acts as alleged above constitute unfair competition under the common law of the State of New Jersey.

68.     As a direct and proximate result of defendants' unlawful conduct, plaintiffs have suffered damages and have been harmed financially and continue to suffer harm to their reputation and goodwill in an amount to be determined at trial.

69.     CMC has no adequate remedy at law.

## COUNT VI
## Unfair Competition – N.J. Stat. § 56:4-1 *et seq.*

70.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully set forth herein.

71.     Defendants' acts as alleged above constitute unfair competition under N.J. Stat. § 56:4-1 *et seq.*

72.     As a direct and proximate result of defendants' unlawful conduct, plaintiffs have suffered damages and have been harmed financially and continue to suffer harm to their reputation and goodwill in an amount to be determined at trial.

73.     CMC has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for judgment against each of the defendants as follows:

1.      That defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be

preliminarily enjoined and restrained, at first during the pendency of this action and, thereafter, permanently:

a)      from using in any manner the CMC Marks, alone or in combination with any word or words, or material or materials which so resemble each said trademark or as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not CMC's, or not authorized by CMC to be sold in connection with each of the CMC Marks;

b)      from passing off; inducing, or enabling others to sell or pass off any product as and for products produced by CMC, not CMC's, or not produced under the control and supervision of CMC and approved by CMC for sale under the CMC Marks;

c)      from committing any acts that cause purchasers to believe that defendants' products are those sold under the control and supervision of CMC, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of CMC;

d)      from further infringing the CMC Marks and damaging CMC's goodwill;

e)      from shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for CMC, nor authorized by CMC to be sold or offered for sale, and which bear or resemble any of the CMC Marks;

f)      from otherwise competing unfairly with CMC or any of their authorized distributors in any manner; and

     g)      from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f).

2.     That defendants be required to deliver up to plaintiffs any and all products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of defendants or under their control bearing any of the CMC Marks, or each of them, alone or in combination with any other words or materials, or used in connection with the advertising, offering for sale or sale of products not CMC's, or not made under the authorization and control of CMC;

3.     That defendants be required to supply plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold products falsely bearing the CMC Marks or products not authorized by CMC to be sold in connection with each of said marks;

4.     That defendants be required to deliver up for destruction their entire inventory of said products bearing any of the aforesaid infringing trademarks;

5.     That defendants, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon plaintiffs a written report under oath setting forth in detail the manner in which defendants have complied with paragraphs 1 through 4, *supra*;

6.     That defendants account for and pay over to plaintiffs all profits realized by defendants by reason of defendants' unlawful acts herein alleged and that the amount of disgorgement for infringement of CMC's registered trademarks be

increased by a sum not exceeding three times the amount thereof as provided by law and that the Court impose whatever temporary, preliminary and final equitable relief is necessary to achieve the foregoing, including but not limited to, the imposition of a constructive trust;

7.    That plaintiffs be awarded actual damages in an amount to be determined at trial and that the amount of damages for infringement of CMC's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law;

8.    That plaintiffs be awarded statutory damages to the maximum extent allowed by law for defendants' willful counterfeiting of the CMC Marks;

9.    That plaintiff be awarded reasonable attorneys' fees and costs; and

10.    That plaintiff have such other and further relief as the Court may deem equitable including, but not limited to, any relief set forth under Sections 34-39 of the 1946 Trademark Act, 35 U.S.C. §281 et seq., and state statutory or common law.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs CMC Food Inc.

and Michael Culley hereby demand trial by jury in this action of all issues so triable.

Respectfully submitted,
**MANDELBAUM SALSBURG, P.C.**


By: _____
Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239) *Pro Hac Vice Admission Pending*
3 Becker Farm Road
Roseland, New Jersey 07068
Tel. (973) 736-4600
rcoleman@lawfirm.ms
jmacmull@lawfirm.ms

*Attorneys for Plaintiffs CMC Food Inc. and
Michael Culley*


Dated: May 8, 2018